May it please the court, I'm Gilbert Levy. I represent Mr. James. I'm going to address the two certified claims and rely on the briefs for the uncertified claim. I would like eight minutes and reserve two for rebuttal. Okay, keep your eye on the clock and sometimes we can save it for you and sometimes not. I'll do my, thank you, thank you, I'll do my best. With respect to the voir dire issue, the district court made a finding that trial counsel had rendered ineffective assistance by failing to make a timely and proper objection to the voir dire. The government does not challenge the district court's finding with respect to that issue. So the question with respect to the voir dire issue is prejudice and also the question of whether or not that finding is foreclosed by this court's determination on direct appeal that it was not plain error. I would say first of all that the plain error standard and the prejudice prong of Strickland are very distinct legal standards. The plain error standard has an additional element that the Strickland prejudice prong does not. It's a discretionary remedy as opposed to a fact-based determination which is under the Strickland standard whether or not there's a reasonable probability that the outcome would be different. Well, there's the fourth prong that goes with the plain error standard and if you're going to find plain error you've got to find all four prongs. That fourth prong doesn't exist with respect to Strickland. That's correct. And the other thing I would point out respectfully with respect to the Strickland standard is that the Supreme Court opinion in Strickland points out it's something less than more likely than not. The reasonable probability standard is not a preponderance test. With respect to the prejudice issue, I think you have to first of all look to the nature of what was said to the jury in the voir dire. I would submit that the counsel's statements were highly prejudicial. They implied that Mr. James, like John Gotti, was a violent offender. They implied that he was the kingpin of some organization, thus it was appropriate for the government to offer deals to the cooperators. So it was highly prejudicial and it in a sense implied that the government had more on Mr. James than was ever presented to the jury. So in a sense Mr. James was convicted not just on the basis of evidence but on the basis of something that the government said in the course of voir dire. I think you also have to look at the nature of the evidence in this case. There was no direct evidence that Mr. James was involved in the crime. He wasn't caught at the takedown. He wasn't caught in possession of the drugs. There was no unexplained wealth. The primary evidence against him was testimony of a cooperating witness, a testimony of a jailhouse informant, some inconsistent statements, and a somewhat ambiguous recording of a telephone conversation that he'd had at the federal detention center with one of the co-conspirators. So not an overwhelming case. I read the transcript of that conversation with his sister-in-law when she was in prison. That was pretty damning, I thought. Can you help me out on that one and say why not? He says we got too greedy. She warns him, hey, we're being recorded, but he keeps talking anyway. Well, I admit that it was relevant. I don't know that by itself it was damning. It was a very brief statement. It could have been explained away as money that Nazir Hussain was giving to Kim Farah to accompany him to the small sum of money that he was giving to Kim Farah to accompany him to a Sea-Tac airport. So it was something, yes, it was relevant evidence for the government's case, but it was not so compelling by itself that we can't say that the improper statements on voir dire had no effect on the verdict. Mr. James, in support of his 2255 petition, turning now to the uncertified issue, Mr. James alleged that he was given improper legal advice by his counsel, and therefore, although he wanted to testify in this case, he elected not to testify. We asked the district court for an evidentiary hearing so that we could develop the record on this question and so that we could show exactly the nature of the advice that was imparted to Mr. James. The district court denied us an evidentiary hearing. I think under the circumstances, based upon the proffer that we made in support of the 2255 petition, we had alleged a colorable claim. Well, where did I get the impression that he wanted to testify, that he was this honest fellow and so forth, and that his counsel advised him that if he testified, he was going to be cross-examined about his prior felony conviction? Well, it was a prior felony conviction that was more than 10 years old, and it would have been addressed. Well, he could still be cross-examined with it. Well, if he put his character in issue. Well, that was the point. That's what I'm asking. If he had been given proper legal advice at the time, this was on the basis... Well, how far back do we go? I mean, it sounds to me like a lawyer telling a client who wants to get up and testify about his good character that you're going to get cross-examined about your prior felony conviction, and then the client decides not to, and then you come and say, well, that's a violation of Strickland. What in the world? I mean, how can a lawyer practice? I mean, it depends on what the lawyer said, and we don't know what the lawyer said, and that's the problem. If the lawyer said, don't put your character in issue, that would have been appropriate legal advice. If the lawyer said, if you get up there, regardless of what you say, you're going to be impeached with your prior conviction, that would have been inaccurate advice. What we asked for, Judge Edwards, was simply an evidentiary hearing to develop the record. The record is silent on this question, and we submit that we presented enough to get a hearing. Let me think some more about this, and let's assume the facts as they would be most favorable to you, and that is that James says, I want to get up and testify. I'd like to testify about my good character or the fact that I've never been convicted or arrested or whatever he's going to say, and the lawyer says, don't do that. You're going to get impeached. You shouldn't go on the stand, and thus advised, he says, I'm not getting on the stand. In other words, he didn't get complete advice. The lawyer should have said to him, well, listen, if you don't put your character in evidence, you're not going to get cross-examined, and that prior crime isn't going to come in. Well, okay, so if he doesn't put his character in evidence, what's he going to say? He could have refuted a number of the allegations in the government's case. He could have explained the phone call, which the court has indicated was a compelling piece of evidence in favor of the government. Juries like to hear from defendants, like to hear when they testify. Even though they're instructed not to consider that, many times they do, and they would have had an opportunity to see him as a human being, see his demeanor, and given the nature of the evidence, that could have made a difference in the outcome of the case. And plus, he's got an absolute Fifth Amendment right to testify. Of course he does, sure. And he lost that, and if he lost it, because of incorrect advice. I can't remember, did the judge ask him, or ask his lawyer in front of him, whether he was going to be testifying, whether he wanted to testify? Did the judge voir dire him at all? I mean, he would have signed a waiver. He did sign a waiver, didn't he? Yeah, he signed a waiver of his right to testify. And he did that. That isn't even required. I mean, all the judge needs to do is, in open court, ask him, is this your decision involuntarily? Anybody force you? No, that's enough under Ninth Circuit law. More than that. Nobody's faulting the court in this situation. What we're saying is that we should... But I'm saying your client made a knowing decision. Well, if he made a decision based upon incomplete and inaccurate advice, it wasn't knowing, intelligent, and voluntary. You know, your argument is he didn't understand what his options were. That's correct. You're down to about a minute. Shall we hear from the other side, and then you'll have some time. Thank you. Good morning, Your Honors. May it please the Court. Mike Morgan for the United States. Unless the Court has any questions on the uncertified issue, I, too, will limit my discussion to the two certified issues before the Court. With respect to the Bois d'Ire question, the record before the Court today is no different than the record before the Court on Mr. James' direct appeal. Nothing has changed. On his direct appeal... Except perhaps the standard of review. Perhaps. But I would dispute that. But just more generally, if on direct appeal the Court didn't find this Bois d'Ire sufficiently prejudicial to reverse... No, wait a minute. You're avoiding the question I just asked you or the qualification I just gave you. If the standard for plain error is different from the standard for prejudice under Strickland, well, we've got a Strickland question in front of us, and whatever the earlier Court did doesn't matter. Well, first things first. The standard is different but subsumed within the plain error standard. The Court is well aware there's four prongs to plain error. The third prong is a requirement of prejudice. And, in fact, the way plain error works under Alano, the first three steps are whether there's a plain error, i.e., an error that is plain and that is sufficiently prejudicial. Only if all three steps are met may the Court go to the fourth judicially imposed requirement, which is the standard that must be met for the Court to exercise its discretion to notice the plain error. So before you get to step four, you have to make a step three finding that there was prejudice. And the panel said, we don't find plain error. Not that we find plain error but we're going to not exercise our discretion. They say we do not find plain error. The panel did not say we don't find substantial rights were affected. It just said it doesn't show plain error, which could be based on the fourth prong. It could be. If your position is correct, then I guess I shouldn't have written a concurring opinion, saying you could raise cases on habeas. I admit that there is some ambiguity in the opinion. And with respect to Your Honor's concurring opinion, and I'm certainly not going to tell Your Honor what you meant, but you certainly correctly stated the standard that you have to find prejudice and have affect substantial rights. And the Court said, I don't find this sufficiently prejudicial. And Your Honor said, I don't find this sufficiently prejudicial. I mean, you may well have been referring to prong four or prong three. I'm not sure. But let's just step back for a minute here. Again, the record is no different. It would be odd in the extreme if a defendant pressing a claim of prejudice fails on direct review but then could get relief in a collateral proceeding. That's not how things normally work. Except it's a plain error issue versus a Strickland issue. Let me just ask you a more off-the-wall general question. I would assume that Mr. James is not in the category of an angel. But even if he's not an angel, he's entitled to a fair trial. So why is it that the government, although admitting the voir dire was incorrect, doesn't feel that he's entitled to a trial without the images of John Gotti and Sammy the Bull Gravano mucking up the issues in the jury's mind? Well, Your Honor, the government doesn't dispute that the voir dire was improper because this Court has held that it's improper. I'm certainly not going to take issue with the Court's holding. But there's just no evidence on this record. And I think this is important because the defense never attempted to further develop the record about... You certainly can't get into juror deliberations, but you can inquire of the jurors whether any improper influence was before them. It would have been proper to get some declarations from these jurors to say that this voir dire was before us. It was somehow involved. We're not going to say how it affected our deliberations one way or another, but the defense could have done that. And then there might be some further basis. We so discourage going to the jurors to get inside of that black box, and we so routinely ignore what the jurors then say, even when they're asked. I don't fault the defendant for not doing that. I certainly understand that it is a rare case. But when essentially to prevail... Let me say this. Why are you afraid of discussing the actual record? Why don't we go to there? I'm certainly not afraid. You've got five minutes left. Can you tell us why, in your view, this was not prejudicial? Well, it's not prejudicial if you look at the record establishing the defendant's guilt. But the problem intellectually, honestly, that I have to say about that is that the strength of the government's evidence frankly doesn't matter if there was a tainted juror. I mean, that's the law. If there was a tainted juror or if the defendant can show there's a reasonable probability there was a tainted juror, the government loses regardless of the strength of the evidence. But I don't think we're talking about whether we have a tainted juror in the Batson sense. We're talking about whether the jury as a whole was influenced by that prior colloquy in which the jury was asked to think about the rat who was the testifying witness, Sammy the Bull, who had murdered 15 people, and his crime was so serious, but nonetheless the government was willing to give him five years because the defendant, Gotti, was even worse. I mean, let's talk about that. Was that something that sufficiently we can sort of infer or guess? I mean, this is speculation. There's no way around it that it influenced the jury in its determination of guilt of this man. I would say no. I would say no. Why do you say no? I would say no because the evidence against Mr. James was quite strong. I mean, let's be honest. He was convicted because he was on that recording. That's why he was convicted. If you actually look at the deliberations, the jury retired, immediately asked to hear the recording, and immediately returned a guilty verdict. Maybe because they were thinking about Sammy the Bull and John Gotti. Maybe, but there's no reasonable probability that that was the motivating factor behind their verdict. And if there's not a reasonable probability as opposed to just speculation, which is really at the end all the defense has, that can't be sufficient to satisfy your burden under Strickland. It simply cannot. So you guys just get to skate having used an improper voir dire. Well, there's no guarantee that we would have not prevailed had he preserved the issue. We don't know, but that sometimes frankly happens. I mean, again, not every prosecutorial mistake rises to the level that it's going to affect the verdict. And the procedural posture of the case matters. We're on collateral review where it's the defendant's burden to show this as opposed to a direct appeal where, depending on the posture, it might be the government's burden to show he wasn't prejudiced. And maybe if the issue was preserved and it was the government's burden, we wouldn't be able to shoulder it.  It's the defendant's burden. Would you feel better about a conviction if they obtained it without John Gotti and Sammy the Bullet Gravano in the courtroom? I would feel better about it in the sense that the court has found that that was improper. So, yes, of course we would prefer to have flawless trials and trials where there's no error. And you can say without question that there was no mistakes. But we don't live in a perfect world. There are very few perfect trials. And, again, I just don't think on this record and the strength of the evidence against the defendant, the court can reasonably say that there's a reasonable probability that these slight missteps, I mean, the error to be sure, but that that was the driving force, a reasonable probability that that's the driving force behind the jury's verdict. Essentially, we have to look at the entire record. Essentially, yes. The defense counsel suggested this was a light case. I disagree. I thought there was a lot of evidence against the defendant. Basically, his telephone conversation was a confession is what it was. It was. And so what we have to do then is to look, as the merits panel looked, at whether what was an obvious misstatement by an overzealous prosecutor in some way, shape, or form affected the integrity or fairness of the proceeding in the bottom line. I think that's right. And ultimately, the Strickland standard is whether or not there's been a fundamental miscarriage of justice. That's ultimately what it boils down to. Can the court say that? And that's very similar to what you would have to show for step four of plain error. So regardless of how you think the case was decided on the direct appeal, again, it's like it just would seem odd that the error wasn't sufficiently prejudicial to get a reversal on direct appeal, but somehow through the back door of a collateral proceeding, he's going to get released. He's going to get released on direct appeal with a proper objection. And we were doing Chapman. It might well be different. I think you guys would be retrying him right now. It might well be different. With my remaining 15 seconds, I'll just quickly address the second certified issue, which is that the defendant made a proffer that he wanted to testify and put his character in issue. You can't fault defense counsel's advice based on what the defendant's proffer was. The defendant wanted to testify to that. That's his proffer. That's what he said. I was going to testify to this. Given that proffer, defense counsel's advice was completely accurate and certainly could not support an ineffective assistance claim. Thank you, Your Honors. Thank you. Mr. Levy, you've saved about a minute. Judge Ezra, I'd like to return to the evidence just briefly because I would just point out, sir, that this is a case that rested to some extent on the testimony of cooperators. Jurors are instructed that they're to regard that testimony with some skepticism, and many jurors do. If you take out the testimony of the cooperators, what you're left with is some conflicting statements and the phone call, which may be regarded as an admission. I think if you listen to it in context, along with the cooperation, what you're trying to do is you're telling me, look, here we have all these cooperators and we have to look at them with some great deal of skepticism. Look, I've been a trial judge for 28 years. I instruct juries about that every day. I'm going to do it on Monday. Okay, so we know that. But then when you have that coupled with him getting on the phone and essentially confessing to the crime, what does that do? That gives credibility to what the cooperators are saying. You have the two of them working together. That's your problem here with that argument. With all due respect, sir, I take issue that the phone conversation was a confession. It was an ambiguous statement that could be construed as an admission. What I'd like to conclude by saying – I agree with you there. It could certainly have been construed as an admission. What I'd like to conclude by saying is the problem with this case, the whole problem with this case, as Judge Fletcher pointed out, is we don't know. We don't know whether or not this man was convicted on the basis of improper statement by government counsel. We don't know if this man was convicted on the basis of the government's implication that it had more evidence on this guy that he was a kingpin and a violent offender. And because we don't know, I would submit that there's a reasonable probability the outcome of the case would have been different and he should get a new trial. Thank you. Okay, thank both sides for their arguments. James v. United States is now submitted for decision.
judges: Ezra, Fletcher, Gould